[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiff wife against the defendant husband for dissolution of their marriage on the grounds of irretrievable breakdown. The parties were married in Enfield, Connecticut on July 12, 1986 and have three children issue of the marriage, Ashley, born February 18, 1986, Heather, born June 16, 1987, and Rebecca, born September 10, 1991.[1]
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, numerous exhibits were introduced, most of which related to financial issues. Each party submitted sworn financial affidavits and written claims for relief. The parties also stipulated as to certain valuations and to the admissibility of certain evidence. The plaintiff's counsel cited as the principle issue in the case the earnings of the husband available for purposes of child support. Based upon the evidence, the court finds the following facts.
The husband has been an iron worker in the Springfield, Massachusetts area since before the marriage, and is a member of the western Massachusetts local of the iron workers' union. The hourly wage for journeymen iron workers is $21.60, and the benefit package they earn is approximately $13.70 per hour more. Thus, every employer for whom a union member works must pay to the union approximately $36.30 per hour, from which the union pays the wages and benefits, including health insurance, an annuity, vacation pay (accumulated at $1.00 per hour worked) and pension benefits. The husband has been self employed since 1992, and sets his pay at the journeyman's rate although under union rules he would be entitled to a larger wage based on his status as a foreman. His company, Mobile Welding Service, was a sole proprietorship until it was incorporated in 1998.
The husband's financial affidavit lists $508.00 as his gross weekly wage for employment, and $283.00 as his net weekly wage. However, those figures are inaccurate. With respect to the net wage, it is calculated after deducting $61.00 for health CT Page 5239 insurance, but health insurance is paid from the $13.70 per hour benefit package rather than deducted from wages. Accordingly, the figures on his financial affidavit would result in a net weekly wage of $344.00. In fact, the husband's gross and net weekly earnings are larger than that amount. The child support guidelines worksheet attached by the husband to his financial affidavit show a gross weekly wage of $662.00, including retirement benefits, and a net weekly wage of $559.00. This would equal $34,424.00 annually. This is consistent with the representations made by the husband's counsel that the husband's wages are between $30,000.00 and $40,000.00 per year. However, even that sum does not account for all the sums available to the husband through his business.
In 1998, after he incorporated the business, his checking account establishes that he paid himself approximately $13,800.00 net. However, the account also reflects deposits to the business account of $339,421.00 and expenses (including sums the husband paid himself directly) of $300,608.00, for a difference of approximately $38,800.00 between what was deposited in the business and what was spent by it, or $52,600.00 including the $13,800.00 he paid himself. In addition, he took $32,851.00 in cash from the business account in 1998 and $7,260.00 in automatic teller withdrawals. He testified that the cash withdrawals were all in connection with bid bonds for work he would perform, but indicated that the sums deposited were repaid to the business after the job was completed. He testified that the automatic teller withdrawals were used for gasoline and automotive service. The court does not credit that testimony. In 1997, the business only spent $3,725.00 for such purposes. However, in any event the business pays for the husband's personal automotive expenses as well as some of his utility bills. Historically, the business paid even more of the husband's personal expenses. Finally, the defendant acknowledges that he has not been motivated to work in the business during the past two years because of his preoccupation with the divorce. Based on the foregoing and the evidence, the court finds that the husband has available to him $45,000.00 annually and will use that figure in calculating child support obligations.[2] The court notes that the husband's earnings will increase in 1999 based upon his credible testimony that there is more work available to him this year. Any increase will be considered in calculating future child support.
The wife is a thirty seven year old high school graduate who has worked sporadically outside the home throughout the marriage. CT Page 5240 She is about to begin a full time job in food service at $8.00 per hour. The court finds her earnings and gross earning capacity to be $320.00 per week. She will not be eligible for health benefits until she has completed six months of employment.
The cause of the breakdown of the marriage was the husband's adulterous relationship with another woman, which the wife discovered in early 1997. The wife has since had a sexual relationship with another man, but that relationship did not begin until a considerable period after the parties' separation and is not a cause for the breakdown.
Most of the marital assets of the parties are in the husband's name. He has an annuity through his union of $120,000.00, of which $110,000.00 was accrued during the marriage. His pension, based on contributions to date, will pay him $791.00 per month when he reaches sixty-five, all of which was accumulated between the date of the marriage and the date of the parties' separation.[3] His business has a value of $132,000.00[4] The husband owns a house on St. James Avenue in Springfield, Massachusetts with equity of $19,000.00.[5] In addition, the parties own a house on Joan Street in Springfield valued at $94,500.00 subject to a mortgage of $64,593.00.
The husband violated two orders of the court during the pendency of the dissolution. First, he failed to maintain medical and dental insurance for the children as required by the court order of April 2, 1997. He testified that he did not contribute to the union's medical and dental insurance plan during periods he was not working, but he also testified and the court find that he was permitted and financially able to contribute to that plan even when he was not working. In addition, he violated the court order of April 2, 1997 not to dispose of any assets when he spent the $150,000.00 he had accumulated prior to the commencement of the dissolution. That sum was a marital asset.
The husband has a far greater ability than the wife to accumulate assets in the future. Apart from his greater earning capacity, he receives credit toward his pension and his annuity for every hour he works. Those contributions are not deducted from his wages, but are in addition to them.
In entering its orders, the court has considered the statutory requirements set forth in Sections 46b-62, 46b-81,46b-82, and 46b-84, applicable case law, and the evidence and CT Page 5241 findings. The court has also considered the proposed orders and claims of the parties. The court has jurisdiction, and all statutory stays have expired. The court enters the following orders.
1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. The husband will sign and deliver to the wife whatever authorizations are necessary for his union to pay the amounts provided in this judgment or to process insurance claims.
3. The husband will indemnify the wife and hold her harmless on account of any federal or state income tax liability that may be claimed against her by any state or federal agency for the period from 1986 through and including 1997 on account of any tax returns filed by the husband or any business, partnership, corporation, or other entity in which he was involved.
4. The husband will maintain medical insurance for the benefit of the minor children through his union. Coverage will be in effect at all times that he is a member of that union, and as available though his employer at any time he is not a member of the union. The husband will pay any uninsured medical, dental, opthomological, pharmaceutical, and psychiatric/psychological expenses of any child of the marriage during the child's minority. The wife shall have the rights set forth in Section46b-84(d) of the Connecticut General Statutes to process any claim for medical payment or reimbursement as set forth herein, and the husband shall notify his union of this provision by providing the wife with an authorization to process such claims which is substantially in accord with the requirements of the statute. This shall be accomplished within ten days of the filing of this judgment.
5. The husband will maintain his existing life insurance and shall name the children as irrevocable beneficiaries of said insurance during the period he is obligated to pay support.
6. The parties shall have joint legal custody of the children. The wife shall have sole residential custody of the children, and the husband shall have reasonable parenting opportunities and visitation with them provided that he shall not consume any alcohol or drugs during visitation or for twelve hours prior to visitation. The husband shall not permanently CT Page 5242 remove the children from Connecticut without further order of the court.
7. The husband shall be entitled to the tax deductions for the two oldest children so long as his child support payments are current.
8. The husband shall pay as alimony for a period of six months or until her death or remarriage the sum required by the wife to pay for her health insurance, which shall be available to her by way of a COBRA election, and shall cooperate with the wife in making the election. The husband shall, in addition, pay the wife the sum of $1.00 per year as alimony for a period of six years, which term shall not be modifiable. The amount of alimony shall be modifiable only if the husband fails to indemnify the wife on account of debts or taxes as provided herein. This alimony will not terminate on the remarriage of the wife, but will terminate upon the death of either party.
9. The husband shall pay the wife the sum of $3,000.00 for her counsel fees within sixty days of the date of the judgment.
10. The husband shall prepare and execute a Qualified Domestic Relations Order transferring to the wife one half of the value of so much of his pension as was accumulated between July, 1986 and February, 1997. ($791.00 per month x 1/2 = $395.50)
11. The husband shall have his business free of any claim by the wife.
12. The husband shall have the St. James Street property free of any claim by the wife, and shall hold her harmless and indemnify her on account of any past., present, or future mortgage or taxes concerning said property.
13. The wife shall quit claim her interest in the real property on Joan Street to the husband, who shall indemnify and hold her harmless on account of any mortgages, taxes, or other current or past assessments and debts related to that property. Upon the first to occur of the husband's remarriage, the husband's death, the husband's failure to use the property as his principal place of residence, or five years from the date of judgment, the husband shall pay the wife the sum of $10,000.00, secured by a mortgage on the said property without interest. CT Page 5243
14. The husband shall prepare and execute a Qualified Domestic Relations Order transferring to the wife the sum of $110,000.00 of the value of his annuity with the Iron Worker's Union.
15. The husband shall pay the wife in full for any medical, dental, psychiatric, and/or psychological bills incurred by the wife in behalf of any of the minor children between April 2, 1997 and the date of this judgment which are not covered by insurance.
16. The husband shall pay the wife the sum of $261.00 per week as child support. This sum is consistent with the Child Support Guidelines. Child support shall be paid until the youngest child reaches the age of eighteen or graduates from high school, whichever is later, but in no event beyond the child's nineteenth birthday.
Judgment shall enter accordingly.
BY THE COURT,
GRUENDEL, J.